```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          NORTHERN DIVISION


AYERS OIL CO.,                      )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )      No. 2:09 CV 02 DDN
                                    )
 AMERICAN BUSINESS BROKERS, INC.    )
                                    )
        Defendant and               )
        Third Party Plaintiff,      )
                                    )
        v.                          )
                                    )
ROBERT AYERS and STEVE AYERS,       )
                                    )
        Third Party Defendants.     )
                                    )
```

### **MEMORANDUM AND ORDER**

This action is before the court on the motion of plaintiff Ayers Oil Co. to quash or modify the subpoena directing Paul Richards, CPA, to appear for a deposition. (Doc. 45.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 21.)

### **I.  BACKGROUND**

In Count I of its first amended complaint, Ayers Oil seeks a declaratory judgment, declaring that the Exclusive Listing Agreement between it and American Business Brokers, Inc. (ABB) terminated on February 12, 2008, and that it does not owe ABB any commission. (Doc. 32 at 6.) In addition, Ayers Oil alleges it suffered damages from the loss of the benefit of the purchase agreement, in which Robert and Steve Ayers had agreed to sell Ayers Oil Company and Illinois Ayers Oil Company to Convenience Stores, LLC. (Id. at ¶¶ 12, 17.) In Count II, Ayers Oil alleges ABB was negligent in giving advice relating to the brokerage agreement and failing to perform its obligations under the agreement. (Id. at ¶ 24.) Ayers Oil alleges it suffered $250,000 in damages as a proximate result of this negligence, as well as damages from the loss of the benefit of the purchase agreement. (Id. at ¶ 27.)

In Count I of its counterclaim against Ayers Oil, ABB alleges that it had a brokerage agreement with Ayers Oil, by which it would receive a 4% commission for finding a willing buyer for Ayers Oil. (Doc. 7 at ¶ 18.) ABB alleges it found a buyer willing to purchase Ayers Oil for $19 million. (Id. at ¶ 22.) Alleging breach of the brokerage agreement, ABB alleges it has suffered $760,000 in damages. (Id. at ¶¶ 25-29.) In Count II of its counterclaim, ABB alleges an implied contract existed between the parties, and seeks to recover its $760,000 commission under a quantum meruit theory. (Id. at ¶¶ 30, 34.)

ABB has also filed a third-party complaint against third-party defendants, Robert Ayers and Steve Ayers. (Doc. 8.) In Count I of its third-party complaint, ABB alleges that it is entitled to receive its $760,000 commission from Robert and Steve Ayers. (Id. at ¶ 22.) In support of Count I, ABB alleges there was a mutual agreement between the parties, and that Robert and Steve Ayers breached this agreement. (Id. at ¶¶ 24, 28.) In Count II, ABB alleges an implied contract existed between the parties, and seeks to recover its commission under a quantum meruit theory. (Id. at ¶ 30.) In Count III, ABB alleges that Robert Ayers asked ABB to sell his stock in Illinois Ayers Oil Co. to prospective buyers, according to a stock sale agreement. (Id. at ¶¶ 8, 11.) ABB alleges that it found a buyer willing to purchase Ayers's stock. (Id. at ¶¶ 13, 15.) Alleging breach of contract, ABB seeks to recover its commission under the stock sale agreement. (Id. at ¶¶ 24-25.) In Count IV, ABB alleges an implied contract existed between the parties, and seeks to recover its stock sale commission under a quantum meruit theory. (Id. at ¶ 26.)

In turn, third-party defendants Robert and Steve Ayers filed a counterclaim against third-party plaintiff ABB. (Doc. 33.) In their counterclaim, the Ayers allege ABB was negligent in giving advice relating to the brokerage agreement and failed to perform its obligations under the agreement. (Id. at ¶ 10.) They allege they suffered $250,000 in damages as a proximate result of ABB's negligence. (Id. at ¶ 13.)

## II. MOTION TO QUASH

Plaintiff Ayers Oil Co. moves to quash or, in the alternative, modify the subpoena directing Paul Richards to appear for a deposition. (Doc. 45.) Ayers Oil argues that Paul Richards is a CPA, who provides accounting services to the company. As a result, Ayers Oil argues that any financial documents given to Richards, and any communications between Ayers Oil and Richards are covered by Missouri's Accountant-Client Privilege statute. Under the statute, Ayers Oil argues that ABB cannot depose Richards or review the requested documents. In the alternative, Ayers Oil argues ABB did not properly serve the subpoena, and that the subpoena did not properly request production of the documents. (Doc. 46.)

In response, ABB argues that Ayers Oil has placed its financial position before the court by virtue of its lawsuit, and in doing so, has waived the accountant-client privilege. ABB also argues that its subpoena fully complies with the federal rules. (Doc. 47.)

### III. DISCUSSION

Federal law does not recognize an accountant-client privilege. In re Kroh, 80 B.R. 488, 489 (Bankr. W.D. Mo. 1987); In re Tidewater Group, Inc., 65 B.R. 179, 181 (Bankr. N.D. Ga. 1986). However, in any civil proceeding where state law supplies the rule of decision, "the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law." Fed. R. Evid. 501. In diversity actions, like the one before the court, Rule 501 provides that parties may assert state law evidentiary privileges. Commercial Union Ins. Co. of Am. v. Talisman, Inc., 69 F.R.D. 490, 491 (E.D. Mo. 1975).

Missouri law expressly recognizes the accountant-client privilege. Mo. Rev. Stat. § 326.322.[1] With certain exceptions, information provided by the client to the accountant relating to accounting services

---

[1] The accountant-client privilege law was previously codified as Missouri Revised Statute § 326.151. See State ex rel. Sw. Bell Publ'ns v. Ryan, 754 S.W.2d 30, 31 (Mo. Ct. App. 1988). The two versions are all but identical. Compare Mo. Rev. Stat. § 326.322.2, with Mo. Rev. Stat. § 326.151.

"shall be privileged and confidential. . . ." Mo. Rev. Stat. § 326.322.1. In addition, an accountant "shall not be examined by judicial process or proceedings" without the client's consent with respect to "any communication made by the client to the [licensed accountant] . . . in the course of professional employment. . . ." Mo. Rev. Stat. § 326.322.2. This privilege exists in all cases, except when material to the defense of an action against a licensed accountant. Id.

The purpose of the accountant-client privilege is to create an atmosphere where the client will provide all relevant information to the accountant without fearing future disclosure in subsequent litigation. Sears, Roebuck & Co. v. Gussin, 714 A.2d 188, 193 (Md. 1998); Fed. Ins. Co. v. Arthur Anderson & Co., 816 S.W.2d 328, 331 (Tenn. 1991). Without this protection, the client might withhold certain unfavorable information, making the accountant unable to adequately perform his services. Fed. Ins. Co., 816 S.W.2d at 331. The accountant-client relationship can therefore be seen as analogous to the attorney-client relationship. Id.

The accountant-client relationship is far from absolute, subject to both exceptions and waivers. See Mo. Rev. Stat. § 326.322.2; Ryan, 754 S.W.2d at 32; State ex rel. Schott v. Foley, 741 S.W.2d 111, 113 (Mo. Ct. App. 1987). As noted in Foley, the plain language of the statute "clearly excludes enforcement of the privilege in any case against any accountant." Foley, 741 S.W. 2d at 113. And as noted in Ryan, the statutory language "without the consent of [the] client" establishes the possibility of a waiver. Ryan, 754 S.W.2d at 31; see also Savino v. Luciano, 92 So.2d 817, 818 (Fla. 1957) ("As in the case of all personal privileges, the accountant-client privilege may be waived by the client."). Any waiver, however, must be made by the plaintiff; the privilege cannot be waived through issues raised by the defense. In re Tidewater Group, 65 B.R. at 182 (finding there was no waiver where the defendant raised the issue of the plaintiff's financial condition).

In Ryan, Erker Brothers Optical Company filed suit against Southwestern Bell Telephone Company, alleging the telephone company disclosed confidential information about Erker Brothers to third

parties.  Id. at 30.  Erker Brothers claimed actual and punitive damages, and based its lawsuit in tort and breach of contract.  Id. When Southwestern Bell discovered that Erker Brothers's claim for actual damages rested on an expert's calculations of lost profits and lost market share, Southwestern Bell moved to depose Erker Brothers's accountant to testify about the financial condition of the company.  Id. When the trial judge denied the motion to compel, Southwestern Bell appealed.  Id.

On appeal, the court noted that the calculation of a company's profits or losses was "entirely a function of accounting practices and procedures."  Id. at 32.  By filing a lawsuit seeking damages for lost profits, Erker Brothers had put its financial condition at issue, waiving its privilege under the statute.  Id.  The court therefore held that Southwestern Bell was entitled to depose the company's accountant about "the information and data he accumulated and the practices and procedures he adopted in preparing tax returns and financial statements and reports for Erker [Brothers], and to discover the supporting documentation therefor."  Id.

Looking to Ryan, the question is whether Ayers Oil has placed its financial condition at issue by filing this lawsuit.  After reading the complaint, the answer is that it has not.  In Count I of its complaint, Ayers Oil seeks a declaratory judgment, stating that the Exclusive Listing Agreement between it and ABB terminated on February 12, 2008, and that it does not owe ABB any commission.  (Doc. 32 at 6.)  In addition, Ayers Oil alleges it suffered damages from the loss of the benefit of the purchase agreement, in which Robert and Steve Ayers had agreed to sell Ayers Oil Company and Illinois Ayers Oil Company to Convenience Stores, LLC.  (Id. at ¶¶ 12, 17.)  In Count II, Ayers Oil alleges ABB was negligent in giving advice relating to the brokerage agreement, and this negligence caused Ayers Oil to breach the purchase agreement.  (Id. at ¶¶ 24-25.)  Ayers Oil seeks at least $250,000 in damages as a proximate result of this negligence: the price of the settlement payment in the termination agreement between Robert and Steve Ayers and Convenience Stores, LLC.  (Id. at ¶¶ 26-27; Doc. 32, Ex. 5.)

The allegations in the complaint do not implicate Ayers Oil's financial condition. The allegations in Count I do not concern the company's profits or losses, but rather its outright sale to a third party purchaser - in which case the third party purchaser might have the claim for lost profits. See Kemmons Wilson, Inc. v. Allied Bank of Tex., 836 S.W.2d 104, 113 (Tenn. Ct. App. 1992) (finding the plaintiffs had a claim to lost profits, when the defendant breached its contract to sell a company to the plaintiffs). There is no claim for past or future lost profits in Count I. In Count II, Ayers Oil seeks a predetermined amount of damages: $250,000. This amount corresponds to the settlement payment Robert and Steven Ayers paid Convenience Stores, LLC, as part of a termination agreement. (Doc. 32, Ex. 5.) No accounting procedures or analysis of Ayers Oil's financial condition are necessary to verify this amount. Looking to the complaint, Ayers Oil has not placed its financial condition at issue by filing this lawsuit. Accordingly, Ayers Oil did not waive the accountant-client privilege. See Ryan, 754 S.W.2d at 32.

In the notice of deposition, ABB seeks to compel Paul Richards to produce a number of documents at his deposition. (Doc. 45, Ex. 3.) These documents include federal and state income tax returns for Ayers Oil and Illinois Ayers Oil Co., financial statements for Ayers Oil and Illinois Ayers Oil Co., correspondence relating to his representation of the two companies, and workpapers and accounting documents obtained from the two companies. (Id.) These documents clearly contain "information communicated to the [licensed accountant] by the client relating to and in connection with services rendered to the client by the [licensed accountant]." Mo. Rev. Stat. § 326.322.1. These documents are therefore "privileged and confidential." Id. ABB may not compel Richards to produce these documents. In addition, ABB may not depose Paul Richards to the extent it seeks to question him about any communications made by Ayers Oil or Illinois Ayers Oil to Richards in the course of his professional employment. See Mo. Rev. Stat. § 326.322.2.

## IV.  CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED THAT** the motion of plaintiff Ayers Oil Co. to quash or modify the subpoena directing Paul Richards, CPA, to appear for a deposition (Doc. 45) is sustained.  ABB may not compel Richards to produce the documents listed in its notice to take deposition.  In addition, ABB may not depose Paul Richards to the extent it seeks to question him about any communications made by Ayers Oil or Illinois Ayers Oil to Richards in the course of his professional employment.  ABB may, however, depose Richards as to topics not governed by the accountant-client privilege statute.


　　　　　　　　　　　　　　　/S/   David D. Noce
　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**


Signed on August 20, 2009.